FILED

JAN 27 2022

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT



**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>PORTLAND INJURY INSTITUTE, LLC<br>       Debtor. | BAP No. OR-21-1138-GTB<br><br>Bk. No. 3:21-bk-30158-DWH |
| BINH HUU DO,<br>       Appellant,<br>v.<br>KENNETH S. EILER, Chapter 7 Trustee;<br>VOLODYMYR GOLOVAN; PLATINUM<br>MANAGEMENT, INC.; PORTLAND<br>INJURY INSTITUTE, LLC,<br>       Appellees. | **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the District of Oregon
David W. Hercher, Bankruptcy Judge, Presiding

Before: GAN, TAYLOR, and BRAND, Bankruptcy Judges.

## INTRODUCTION

Dr. Binh Huu Do, creditor and owner of chapter 7[1] debtor Portland

Injury Institute, LLC ("Debtor"), appeals the bankruptcy court's order

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the

authorizing chapter 7 trustee Kenneth Eiler ("Trustee") to sell estate assets pursuant to § 363(b). The court granted Trustee's motion to sell substantially all the estate's tangible and intangible property, including Trustee's powers to avoid transfers under the Bankruptcy Code, to creditor Platinum Management, Inc. ("Platinum"), an entity owned by Volodymyr Golovan. We AFFIRM.

## FACTS[2]

### A. Prepetition Facts

In December 2018, Dr. Do formed Debtor as a single member LLC to perform chiropractic services. After forming Debtor, he entered into an agreement with Platinum, under which Platinum would provide management and other services to Debtor. The exact nature of the agreement is disputed by the parties. Mr. Golovan asserts that as part of the agreement, he became a minority owner of Debtor and had a right to Dr. Do's remaining interest in Debtor if he left the practice. Dr. Do contends that he was not obligated to transfer his interest and Mr. Golovan never had an ownership stake in Debtor.

Because of the dispute, Debtor informed its patients in October 2019 that it would no longer provide services, and it ceased operations by

---

Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2] We exercise our discretion to take judicial notice of documents electronically filed in Debtor's bankruptcy case and related adversary proceedings. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

November 2019. Mr. Golovan alleges that after Debtor ceased operations, Dr. Do continued to collect payments and insurance reimbursements on behalf of Debtor and failed to account for over $200,000 of Debtor's funds.

Dr. Do claims that after Debtor ceased operations, Mr. Golovan attempted to initiate an improper purchase of Dr. Do's ownership in Debtor, filed documents with state authorities indicating that he was the sole owner of Debtor, and took possession of all Debtor's property, including patient records.

**B.      The Bankruptcy Case And Trustee's § 363 Motion**

In January 2021, Debtor filed a chapter 7 petition. Debtor's only scheduled assets consisted of office equipment—repossessed prepetition and having an unknown value—and accounts receivable, which Debtor valued at $0. Debtor included Platinum and Mr. Golovan as unsecured creditors but listed their claims at $0. Debtor also scheduled Mr. Golovan as owner of a 49% interest in Debtor but indicated that the interest was disputed.

In April 2021, Trustee file a motion for authority to sell property pursuant to § 363. Trustee attached a proposed asset purchase agreement ("APA") which contemplated a sale of all Debtor's personal and intangible property, and all causes of action against third parties, including Trustee's avoidance powers under the Bankruptcy Code. The APA excluded from assets to be sold the unused retainer held by Debtor's bankruptcy counsel and Debtor's medical records.

3

Trustee proposed to sell the assets by private sale to Platinum for $15,000 and set a date for submission of competing bids. Trustee stated in the motion: "The buyer claims that it already owns the debtor's assets. This sale is intended to remove any doubt. In addition, this sale will give the buyer the right to pursue the debtor's former principal for any avoidable transfers made while that principal controlled the debtor."

Dr. Do filed an objection to Trustee's motion, arguing that the proposed sale would violate the Health Insurance Portability and Accountability Act ("HIPAA"). He maintained that a sale of accounts receivable would necessarily include individually identifiable health information and was thus subject to HIPAA requirements regarding disclosure of protected health information. He also argued that Trustee could not sell the avoidance actions to Platinum unless it was pursuing interests common to all creditors and would exercise those powers for the benefit of the remaining creditors. Dr. Do additionally filed a motion to extend the deadline for overbids until seven days after the court ruled on his objection and contended that if his objection were overruled, he anticipated filing a higher bid.

Platinum responded to Dr. Do's objection and confirmed its intent to comply with HIPAA under the terms of the proposed sale. It attached a proposed order that would amend the APA to specifically exclude individually identifiable health information or protected health information as those terms are used in HIPAA. Platinum further argued

4

that Ninth Circuit precedent permitted Trustee to sell his avoidance actions "to one who would not exercise the powers for the benefit of all creditors," citing *Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.)*, 177 F.3d 774, 781 (9th Cir. 1999).

In May 2021, the bankruptcy court held an initial hearing on Trustee's motion and instructed the parties to confer regarding dates and times for an evidentiary hearing. Prior to a continued status hearing, Platinum filed a supplemental response and argued that the court should approve the sale without an evidentiary hearing. Platinum attached an amended APA which it asserted made clear that no protected health information would be included in the sale absent patient consent. It argued that the court's only role was to determine whether Trustee properly exercised his business judgment in executing the amended APA.

At the status hearing, the bankruptcy court questioned whether, in light of the amended APA, an evidentiary hearing was still necessary and set an argument on whether the sale could be approved based on the documents. After the argument, the bankruptcy court determined that the amended APA did not violate HIPAA because it expressly excluded protected health information and, therefore, an evidentiary hearing was unnecessary.

Turning to Dr. Do's second basis for objection, the bankruptcy court stated that it agreed with *Simantob v. Claims Prosecutor, LLC (In re Lahijani)*, 325 B.R. 282, 288 (9th Cir. BAP 2005), in which we reasoned that an

5

avoidance action could be sold to a creditor because the purchase price would benefit all remaining creditors.

Finally, the bankruptcy court denied Dr. Do's motion to extend the overbid deadline. The court noted that the overbid provision was not required and was included by Trustee for his convenience. Trustee opposed the extension, and the court reasoned that it cannot remake Trustee's deal and must defer to Trustee's reasonable business judgment. The bankruptcy court entered an order granting Trustee's motion to sell the assets, and Dr. Do timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(N). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court abuse its discretion by granting Trustee authority to sell assets under § 363(b)?

## STANDARD OF REVIEW

We review for abuse of discretion a bankruptcy court's decision to approve a sale of property under § 363. *In re Lahijani*, 325 B.R. at 287. A bankruptcy court abuses its discretion if it applies an incorrect legal standard or its factual findings are illogical, implausible, or without support in the record. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

## DISCUSSION

Dr. Do makes three principal arguments on appeal. First, he claims that the APA was ambiguous, and the court should have held an evidentiary hearing to understand how the sale might violate HIPAA. Second, he contends that the bankruptcy court violated Ninth Circuit precedent because: (1) it did not determine whether Platinum was a good faith purchaser under § 363(m); (2) it did not analyze the sale under the "fair and equitable" settlement standard of Rule 9019; and (3) it approved a sale of avoidance actions to a creditor who would not pursue the claims on behalf of the estate or provide the estate with a share of its potential recovery. Finally, Dr. Do argues that the bankruptcy court erred by declining to extend Trustee's bid deadline after granting Trustee's motion for authority to sell assets to Platinum.

### A.    Legal Standards Involved In § 363 Sales

Pursuant to § 363(b), a trustee may sell property of the estate, outside the ordinary course of business, after notice and a hearing. Property of the estate which Trustee may sell includes causes of action owned by Debtor on the petition date and property recovered by Trustee pursuant to avoiding powers. 11 U.S.C. §541(a)(1), (3). In the Ninth Circuit, a bankruptcy trustee may also sell or transfer a bankruptcy-specific avoiding power. *In re Lahijani*, 325 B.R. at 288 (citing *In re P.R.T.C., Inc.*, 177 F.3d at 781; *Briggs v. Kent (In re Pro. Inv. Props. of Am.)*, 955 F.2d 623, 625-26 (9th Cir. 1992)).

7

Trustee's obligation in selling property, and the bankruptcy court's obligation in approving a motion under § 363(b), "is to assure that optimal value is realized by the estate under the circumstances." *In re Lahijani*, 325 B.R. at 288. We defer to Trustee's position "where business judgment is entailed in the analysis or where there is no objection." *Id.* at 289.

**B.      The Bankruptcy Court Correctly Determined The Sale Would Not Violate HIPAA.**

We agree with the bankruptcy court that an evidentiary hearing was unnecessary because, after Trustee amended the APA, there was no factual question about whether the proposed sale involved protected health information. The amended APA specifically excluded from assets to be sold, "any protected health information or other information . . . covered by [HIPPA]" and further stated, "[f]or avoidance of doubt, Seller is not selling, and Buyer is not buying, any Protected Health Information and no such Protected Health Information will be transferred as a result of this Transaction." And the bankruptcy court's order authorizing the sale contained a provision that "the Purchased Assets do not include any individually identifiable health information or protected health information, as those terms are used in [HIPPA]."

Dr. Do argues that Platinum, Mr. Golovan, and Trustee misunderstand what information is protected under HIPAA and which assets may contain protected health information. But Dr. Do does not explain how the bankruptcy court abused its discretion by approving a sale

that expressly excludes protected health information, regardless of the parties' alleged confusion about its definition.

If Trustee conveyed to Platinum protected health information, as Dr. Do fears, he would not do so under the authority of the bankruptcy court's order. The bankruptcy court has an obligation to ensure that its sale order complies with law, but it is not required, as a condition of approving a sale, to anticipate and protect against actions taken in contravention of its orders. We see no abuse of discretion in the bankruptcy court's decision to approve the sale without an evidentiary hearing about potential violations of HIPAA.

## C. The Bankruptcy Court Applied The Correct Analysis In Approving The Sale.

Dr. Do misapprehends the legal framework involved in a bankruptcy court's authorization of a sale under § 363(b). First, he argues that the bankruptcy court was required to conduct a good faith and fair dealing analysis before approving the sale, but we have previously held "an actual finding of 'good faith' is not an essential element for approval of a sale under § 363(b)." *Thomas v. Namba (In re Thomas)*, 287 B.R. 782, 785 (9th Cir. BAP 2002). A good faith finding is relevant to the safe harbor provisions of § 363(m), but Trustee did not request a § 363(m) determination and the court was not required to make a factual finding of good faith to approve the sale under § 363(b). *DeBilio v. Golden (In re DeBilio)*, BAP No. CC-13-1441-TaPaKi, 2014 WL 4476585, at *6 (9th Cir. BAP Sept. 11, 2014).

Second, Dr. Do claims that the bankruptcy court should have evaluated the sale under the "fair and equitable" settlement standard as described in *Goodwin v. Mickey Thompson Entertainment Group (In re Mickey Thompson Entertainment Group)*, 292 B.R. 415 (9th Cir. BAP 2003). Dr. Do did not raise this argument in the bankruptcy court and, thus, has waived the issue. *See Mano-Y & M, Ltd. v. Field (In re Mortg. Store, Inc.)*, 773 F.3d 990, 998 (9th Cir. 2014).

Furthermore, it is appropriate for a bankruptcy court to analyze a sale of an estate cause of action under the settlement standard when the purchaser of the action is also the potential defendant of the cause of action. *See Fitzgerald v. Ninn Worx Sr, Inc. (In re Fitzgerald)*, 428 B.R. 872, 884 (9th Cir. BAP 2010); *In re Lahijani*, 325 B.R. at 290. This analysis "rest[s] on the common-sense proposition that a 'sale' of claims to a defendant has the same effect as a settlement of those claims, so such 'sales' should be evaluated both as sales and as settlements." *Rogers v. Gladstone (In re Bardos)*, BAP No. CC-15-1217-FDKu, 2016 WL 1161225, at *10 (9th Cir. BAP Mar. 23, 2016). But the potential avoidance actions at issue here are against Dr. Do, not Platinum. There is no basis for the court to analyze the sale of claims against Dr. Do under the settlement standard when such claims are sold to a third party who is not a potential defendant.

Finally, Dr. Do contends that under the holding of *P.R.T.C.*, the avoidance actions could be sold only to a third party who would pursue interests common to all creditors and would exercise the avoidance powers

for the benefit of all creditors. We specifically rejected this argument in

*Lahijani*:

> We reject appellants' argument that the avoiding power causes of action should not have been sold to one who would not exercise the powers for the benefit of all creditors.
>
> The difficulty with this argument is that, under the law of the circuit, trustee avoiding powers may be transferred for a sum certain. *P.R.T.C.*, 177 F.3d at 781–82; *Briggs*, 955 F.2d at 625–26. The benefit to the estate in such circumstances is the sale price, which might or might not include a portion of future recoveries for the estate. Thus, *P.R.T.C.* and *Briggs* do not mandate, as appellants contend, that the avoidance powers can only be sold to a creditor who agrees to pursue those avoidance powers for the benefit of all creditors.

325 B.R. at 288.

The bankruptcy court did not abuse its discretion by authorizing the sale of avoidance actions to Platinum for a sum certain.

**D.  The Bankruptcy Court Did Not Err By Denying Dr. Do's Motion To Extend The Overbid Deadline.**

Dr. Do's motion to extend the overbid deadline is essentially an objection to Trustee's sale procedures. "A trustee's selection of bidding and sale procedures is a matter committed to the trustee's business judgment, to which the bankruptcy court and this Panel give deference." *Bonnett v. Gillespie (In re Irish Pub-Arrowhead, LLC)*, BAP Nos. AZ-13-1024-PaKuD, AZ-13-1043-PaKuD, 2014 WL 486955, at *10 (9th Cir. BAP Feb. 6, 2014).

Here, Trustee exercised his business judgment by proposing a private sale of assets to Platinum with a procedure for interested parties to submit higher bids. Dr. Do argues that the bankruptcy court should not have relied on Trustee's business judgment because the court has the ultimate responsibility to ensure that estate assets are sold for optimal value. Dr. Do had notice of the proposed sale and overbid deadline, but he did not submit a competing bid or object that the proposed sale provided insufficient value. *See In re Lahijani*, 325 B.R. at 287 ("Objections to sale that are based on inadequacy of price are often resolved by the court ordering an auction, which may occur in open court."). Instead, he sought to conditionally modify Trustee's bid procedures without any evidence that an extension would yield a higher bid. The bankruptcy court appropriately deferred to Trustee's business judgment and did not abuse its discretion by denying Dr. Do's motion.

## CONCLUSION

Based on the foregoing, we AFFIRM the bankruptcy court's order authorizing the sale under § 363(b).